GIDEON L. SPENCER AND THOMAS PIERCE, ASSIGNEES, *v.* GEORGE W. JACKSON.

A voluntary assignment, which on its face purports to convey all the assignor's property, when in fact he has other property not disclosed in the assignment, is void as against creditors ; but, if it does not so purport, it is valid notwithstanding property may remain in the hands of the assignor unassigned.

A voluntary assignment of certain specified partnership property upon trust, *first*, to pay certain specified creditors in full if the proceeds are sufficient, and if not, ratably ; *second*, to pay, out of the residue, in full if sufficient, if not rateably, such of the creditors of the firm as should within four months from the date of the assignment present their claims, with satisfactory proofs of their correctness, and execute and deliver releases of their said claims to said partnership ; and, *third*, to distribute the remaining proceeds ratably in proportion to their respective claims among the creditors who should, within eight months, present their claims with satisfactory proof of their correctness, was held to be a valid assignment notwithstanding all the partnership property did not pass by it, and was held to be unaffected by false representations of the assignors as to their property at the time their debts were incurred or by their flight and carrying away a part of the assigned funds. But a voluntary assignment made in furtherance of a design to carry away a portion of the assigned property, which design is connived at by the assignees, is fraudulent and void.

TRESPASS. The facts in this case are as follows : Theodore Horton and Ferdinand Horton, the assignors of the plaintiffs, were extensive dry goods dealers in Providence. In August and September of the year 1850, they made large purcheses of goods for their business from various merchants in New York and Boston, payable upon credit of six and eight months. In December, 1850, they re-

Spencer and Pierce v. Jackson.

fused payment of the notes due from them. It appeared in evidence, that in the summer of 1847 they had represented themselves to the merchants with whom they dealt in New York and Boston, to be worth about forty thousand dollars over and above all their debts, which representations they repeatedly reaffirmed up to the time when they stopped payment. That, at that time, they refused to make any statement of their affairs to their creditors, but said they undoubtedly could, and probably should, pay one hundred cents on a *dollar upon* the demands against them, and declined a proposal, made by certain parties whose claims were matured, to take back the goods which they had purchased. From December, 1850, until the 8th of March, 1851, they continued selling out their stock of goods, the proceeds of their daily sales averaging from four to five hundred dollars. Two or three times during this period they marked down the price of the goods in order to accelerate the sales. The estimated value of the proceeds of the sales *during this* period amounting to 40 or $50,000. On the 8th of March, 1851, they made assignments of their partnership and individual property to the plaintiffs.

By their partnership assignment they conveyed their leasehold interest in the lot upon which their store was situated, and all their right, title and interest in the buildings and improvements upon said lot. Also all and singular the merchandise, stock in trade, shop-furniture, fixed and moveable, goods, chattels and effects of every kind and description to them belonging in and about the building above mentioned, including their right in a stock of carpetings bargained but not yet paid for by, nor delivered to, Wm. Barstow. Also, all rights, credits, choses in action, claims and demands due by note, book account,

or otherwise to them belonging, together with their books of account and other evidences of debt and leases and polices of insurance. Also the surplus of the money which should remain in the hands of Thomas Pierce, after executing the trusts of their individual assignments. Also all their right, title and interest, whether as partners or individuals, in a certain lot of land. with the buildings and improvements thereon, situate in Fall River, Mass. The trusts upon which this property was conveyed were—

*First.* To pay certain preferred creditors, designated by name, their demands in full, if the proceeds were sufficient, and if not, ratably.

*Secondly.* To pay out of the residue of the proceeds, in full, if sufficient, otherwise ratably, the just demands of all those creditors of the firm of Horton & Brother, who should within four months from the date of the deed, present to the assignees their claims, with satisfactory proofs of correctness, and execute and deliver to them for *Horton & Brother* a release or releases of their respective claims against the said Horton & Brother.

*Thirdly.* To distribute the residue of the proceeds, if there were any after making the payments as above ordered, ratably in proportion to their respective claims, among the creditors who should, within eight months, present their claims with satisfactory proofs of correctness.

By their individual assignments they conveyed to Thomas Pierce all their separate personal property in trust to pay their separate creditors, with the same provisions as to the release and time of payment as in their partnership assignment, and directed the surplus, if any should remain, to be paid to their partnership creditors upon the terms of their partnership assignment.

These deeds were executed on the 8th of March, 1851, being Saturday, between the hours of eleven and twelve at night. The same night Theodore and Ferdinand Horton rode down the west side of Narragansett Bay, to a place opposite Dutch Island, and there embarked on board a vessel which was waiting for them, and sailed immediately for Cuba. It further appeared that their intended departure was kept a profound secret, unknown even to the person employed to draw the assignments until shortly before they were executed. That they obtained their passports from another port, and that they engaged their passage as a sick gentleman and his nurse, and made the voyage without disclosing their true names. By the directions of the Hortons, the assignments were not delivered to the plaintiffs until the Monday morning following. Upon taking possession of the store and goods, the plaintiffs found about one hundred and fifteen dollars in change in the store, but, other than this, no money whatever of Horton & Brother, or either of them, ever came to their hands. And it was further proved that Horton & Brother had agreed to sell to one William Barstow a lot of carpetings, and had, upon the day of the assignment, endeavored to procure a check for the payment, the goods not having been delivered, which, however, said Barstow declined to give.

In order to show that the plaintiffs knew and connived at the plan of the Hortons to leave the country and carry off with them the money of the firm, the defendant put in evidence that, a few days previous to their assignment, one of the Hortons had visited the plaintiff, Spencer, and acquainted him with his intention to make an assignment and leave the country, and stated, as a reason for absconding, that he was threatened with a criminal prosecution

for the misrepresentations, which he had made in regard to the amount of his property in order to procure credit in New York and Boston. It was proved that a requisition had in fact been applied for to the Governor of New York, upon a criminal charge of this character. It was also in proof that the plaintiffs were present when the assignments were drawn, with the Hortons, during a great part of the time, but in a room separate from that in which the assignments were drawn ; that Spencer was very reluctant to act as assignee, and did not finally consent until shortly before the deeds were executed. It was also proved that on the morning possession was taken, in answer to inquiries from the clerks and the agents of creditors, he had replied that the Hortons had gone out of town and would not return in some time, but where they had gone he did not know. Thomas Pierce, the other assignee, was a brother-in-law of the Hortons.

The defendants also proved the declarations of Theodore Horton that he possessed certain land in the West, which was not conveyed by the assignments.

The plaintiffs proved that, at the time of their departure, Theodore Horton was very low with the consumption, and that a journey to the south had been advised by his physician ; but it appeared that Cuba was suggested by himself, and that he had given as a reason for his preferring that place, that his creditors could not there avail themselves of the laws to collect their demands.

On the 15th of March, 1851, the property conveyed to the plaintiffs by the assignment of Horton & Brother, was attached by the defendant, as Marshal of the United States Circuit Court, upon several writs, issued from said Court against Horton & Brother in favor of several of his creditors, upon which writs judgments were rendered by

default at the last June term of said Court. This action was brought to recover the value of the property so attached.

*Ames* and *Jenckes* for the defendant contended that the assignments were void, because

*First.* A voluntary assignment, for the benefit of creditors stipulating for a release from the creditors as a condition of their taking under it, or even as a condition of a preference, is fraudulent and void in law, where upon its face it does not purport to convey the whole of the debtor's property ; and that such a *voluntary* assignment, which purports to convey the whole of the debtor's property, is void, if it is proved affirmatively that he possessed property which did not pass by it. That in this case there were no words in the assignments which would carry money belonging to the firm of Horton & Brother, and that, if there were such words, yet that it was proved affirmatively that they did have money which had not passed under the assignment.

*Secondly.* That these assignments were a part of a scheme, contrived by the Hortons, to delay, hinder and defraud their creditors—a scheme in which it was shown, although as a matter of law it was not necessary to show it—their assignees had participated, and that these assignments were void on this ground, as against the statute to prevent frauds and perjuries.

The following cases were referred to by the counsel :

*Sheldon* v. *Dodge,* (4 Denio 217), *Seaving* v. *Brinckerhoff,* (5 Johns. Ch. R. 329), *Lippincott* v. *Barker,* (2 Binney 174), *Livingston* v. *Bell,* (3 Watt 198), *Thomas* v. *Jenckes,* (5 Rawle 221), 1 Am. Leading Cases 69. *Hennessey* v. *Western Bank,* (6 Watt. and Serg. 300), *In re Wilson,* (4 Barr 430), *Le Prince* v. *Guillemot,* (1

Richardson 187), *Burlingame* v. *Bell,* (16 Mass. 317), *Russell* v. *Woodward,* (10 Pick 408), *Swearinger* v. *Slicer,* (5 Missouri 241), *Dana* v. *Hull,* (17 Verm. 390), *Hall* v. *Dennison,* (17 Verm. 310), *Harris* v. *Sumner,* (2 Pick 129.)

*Carpenter* and *J. P. Knowles* for plaintiffs contended.

*First.* That by our laws, an assignment, stipulating for a release, where the release was only required, as in this case, as the condition of a preference, was valid, although it did not purport to convey, and did not in fact convey the whole of the debtor's property.

*Secondly.* That the validity of an assignment is not affected by the fraudulent conduct of the assignors, even if participated in by the assignees, so long as the deed is for the benefit of the creditors and contains no fraud in itself.

And they cited the following cases :—

*Halsey* v. *Fairbanks,* (4 Mason 207), *Hall* v. *Dennison* (17 Verm. 310), *Pickstock* v. *Lyster,* (3. M. & Sel. 371), *Lentilhon* v. *Moffatt,* (1 Edwards 464), *Grover* v. *Wakeman* (11 Wend. 187), *Pearpont and Lord* v. *Graham,* (4 Wash. 232), *Seale* v. *Duffey,* (4 Barr 274), *Marbury* v. *Brooks,* (7 Wheat 556—11 Wheat 78), *Haguenin* v. *Basely,* (14 Vesey 273), *Tompkins* v. *Wheeler,* (16 Peters 106), *Brashear* v. *West,* (7 Peters 608.)

HAILE J. in summing up to the jury said. The plaintiffs claim title to the property attached under a deed of assignment of Ferdinand and Theodore Horton of the co-partnership property, and under the two deeds of assign-

ment of their individual property, dated March 8th, 1851. These deeds are proved to have been properly executed, delivered and recorded, and vest in the plaintiffs a perfect title to the property in question, unless they are void in law by reason of fraud in the deeds or in the intent with which they were made.

The parties in this case—the creditors under the assignment and the attaching creditors—have equal equities. In equity and good conscience a debtor's whole property should be appropriated for the payment of his debts, though under the law, where the property is unassigned, one creditor by superior diligence may gain a preference.

The defence rests upon two grounds—first, that the deeds are void, because they do not convey the whole property of Horton & Brother, and yet require a release; and second, because they were made and contrived with the intent or purpose to delay, hinder and defraud the creditors of Horton & Brother of their just debts. By our statute to prevent frauds and perjuries, any deed made and contrived with this intent is absolutely void.

Voluntary assignments for the benefit of creditors have been sustained and upheld by this Court for more than a quarter of a century, on grounds of justice and equity, we having no bankrupt laws. Some such system for the distribution of the property of insolvent debtors is absolutely necessary in a business community like our own. And as a matter of wise legal policy these assignments have been favored, and the legislature have conferred upon this Court equity powers, in order more perfectly to enforce their execution. In administering these powers, we have recognized as law and carried out in practice the decision of the Circuit Court of the United States in the

case of *Halsey* et als. v. *Whitney*, decided in 1826 ; a decision which is also supported by the highest Courts of law and equity in other States and in England. Since that decision, the law, in regard to voluntary assignments, has in some of the States been altered by statute.

In the case of *Burgess* v. *Boon & Spink.* decided at the March term of this Court, 1830, which was elaborately argued by learned and able counsel, the late Chief Justice Eddy delivered the opinion of the Court, after a careful investigation of all the authorities, and the Court decided that a bona fide assignment of all the debtor's property in trust for the benefit of certain preferred creditors, and to pay over the surplus ratably to the other creditors of the assignor, who should present their claims and give a final discharge, within six months, was a valid assignment, and this assignment contained a provision that the residue of the assigned property, after payment of all the debts, should be paid over and reconveyed to the assignor.

In *Dockray* v. *Dockray*, decided at the September term of this Court, 1850, the doctrine of the case of *Burgess* v. *Boon & Spink* was affirmed, with the provision in the assignment that the residue of the property should be paid over to the assignor, this being no more than a court of equity wauld require without any such provision. The rules, laid down in these decisions, constitute the settled law of this State. They have been acquiesced in by the people and the legislature for a great number of years, and we feel bound to carry them out fairly, but not to extend them. We live in a mercantile and manufacturing community, and have no bankrupt law, and a contrary course would work ruin to the business of the State.

Where an assignment is fraudulent, the evidence of

that fraud may exist upon the face of the deed, or it may exist in proof outside of the deed. Thus where the deed contains a power of appointment, or reserves a part of the property for the benefit of the assignor, or where the deed purports to convey the whole of the debtor's property, but does in fact convey only a part, it carries the evidence of its fraud upon its face. The case of *Le Prince* v. *Guillemot,* (1 Richardson, 187), was a case where the deed purported to convey all the property, when in fact the debtor owned other property not disclosed in the assignment, and the High Court of Equity in South Carolina declared it void. The rule laid down in this case we consider the true rule, based in equity, law and common sense ; for such a statement on the face of the deed would have no other effect than to deceive and mislead the creditors. This deed does not purport to convey all the debtor's property, but only certain property specifically set forth. Whether it does in fact convey the whole, it is not necessary to decide. There is nothing on the face of the deed, calculated to deceive or defraud the creditors.

The assignment is, in our opinion, valid on its face. The condition for a release, although the whole of the property of Horton & Brother did not pass, does not make the assignment fraudulent and void, since all the creditors can come in without giving a release under the clause allowing eight months, and the condition requiring a release merely gives a preference. The time allowed is not, under the circumstances unreasonable, nor is the clause requiring proof of claims unreasonable. It gives the assignees no power to deprive creditors of their rights. These would be protected in a court of equity.

There being no evidence of fraud on the face of the deed, is there any evidence of fraud out of it. This is

Spencer and Pierce v. Jackson.

for the jury to determine. If there is fraud it must be clearly proved. It must be proved that the assignment was made with the fraudulent intent to delay, hinder and defraud creditors, and that the assignment at the time of its execution, was intended to be the instrument of this fraud. False representations to creditors, made at the time of the purchase of this stock of goods by the assignors, do not make the assignment void. Nor does fleeing from a criminal prosecution ; nor carrying off the assigned funds in themselves have that effect.

The declaration of Theodore Horton that he possessed land in the Western country, not conveyed by the assignment, is mere hearsay testimony, and not competent to prove the fact. Theodore Horton himself, is a competent witness to this fact, and the record evidence, if it exist, is of a still higher nature.

The knowledge of the assignees that the Hortons were about to flee from a criminal prosecution is no evidence of fraud on their part, since they had no power to prevent it.

If, however, there is any evidence that the assignees knew the property was to be carried away, and that they connived at it to defraud the creditors, and if this was necessary to effect that purpose, it was a fraud. But it must be proved that Horton & Brother intended to defraud by this deed, and that the deed was actually the instrument to defraud, or it does not hinder, delay and defraud creditors. But if you find this to be the fact, then the deed is void, and the attaching creditors are entitled to the property.

*Verdict for the plaintiff for $20,705 58.*